259 So.2d 544 (1972)
Jessie James GAVIN, Appellant,
v.
The STATE of Florida, Appellee.
No. 71-371.
District Court of Appeal of Florida, Third District.
March 14, 1972.
Rehearing Denied April 12, 1972.
*545 Phillip A. Hubbart, Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and J. Robert Olian, Asst. Atty. Gen., for appellee.
Before BARKDULL, C.J., and PEARSON and HENDRY, JJ.
HENDRY, Judge.
Defendant-appellant Jessie James Gavin seeks review of a judgment of conviction for (1) robbery and (2) assault with intent to commit murder in the first degree. A jury in the Dade County Criminal Court of Record found him guilty of those charges. The judge sentenced him to life imprisonment on the robbery charge and twenty years on the assault with intent to murder charge, sentences to run concurrently. See: §§ 813.011; 784.06; and 782.04(1) Fla. Stat., F.S.A. We affirm.
An information of two counts charged him with the crimes of: (1) robbery and (2) assault with intent to commit murder in the first degree. A second information of one count also charged him with robbery. The two informations were consolidated for trial. The jury found him guilty as to the two counts in the first information, but found him not guilty of robbery as charged in the other information which contained one count.
For reversal, he has presented these points: (1) excessive news publicity concerning the defendant so saturated and prejudiced the community that the defendant could not receive a trial by a fair and impartial jury in Dade County, Florida; (2) the state did not establish a prima facie case that the defendant committed a robbery against Betty Richardson as charged in the direct information, and (3) the state did not establish a prima facie case that the defendant committed an assault with intent to commit murder in the first degree on Theodore Rodriguez as charged in the information.
An initial question is presented as to whether the appellant has sufficiently presented for review his argument as to whether the court erred in refusing to grant his motions that two prospective jurors be excused for cause. Rule 3.7(f) (4), Florida Rules of Appellate Procedure, 32 F.S.A. Specifically, there is a question as to whether his contention as to this error is encompassed by his first point on appeal which is paraphrased above, relating to a fair and impartial jury. We assume, without deciding that the point is sufficiently preserved and proceed to a discussion of its merits.
To begin with, we will discuss the facts relating to Gavin's first point. The defendant filed on February 19, 1971, a pretrial motion for a change of venue under Rule 3.240, CrPR, 33 F.S.A. on grounds of excessive pretrial publicity prejudicial to defendant, thereby allegedly precluding an impartial trial in Dade County, Florida. Attached as exhibits to that motion were about sixty clippings from The Miami Herald, which is the morning paper of county-wide distribution, and The Miami News, the evening paper of county-wide circulation. The clippings, spanning two years, discuss the wide-spread hunt for Gavin as the murderer of a Miami Police Officer, his capture after a gun battle in Tennessee, his escape by holding two Miami Police Officers as hostages, and subsequent recapture. The articles frequently mention that Gavin had pleaded guilty to the murder of the police officer and was sentenced to the electric chair. The testimony of the veniremen also revealed that there was television coverage of the manhunt for the defendant and that radio news items concerning the defendant were also heard by certain prospective jurors.
This pretrial motion for change of venue was denied. The defendant urged this denial *546 as a ground for his motion for new trial under Rule 3.600, CrPR, and assigned this as error on the constitutional grounds herein presented.
The defendant has summarized the results of the selection of the jury panel from a venire of forty-three men and women, without contradiction by the state. Of the forty-three veniremen, thirty-eight were examined individually and five were excused by the state exercising peremptory challenges before such voir dire. Of those thirty-eight, twenty-nine stated that they had seen and read pretrial newspaper and/or television publicity concerning defendant, and knew him by name before coming to court. Two had not seen or read such news and had never before heard of him. Defendant exhausted his twenty peremptory challenges, and the state exercised ten.
During voir dire, on February 24, 1971, defendant renewed his motion for change of venue and inserted in the record a February 23, 1971, Miami News article and a February 24, 1971 Miami Herald article. Both items related that defendant in open court, but out of the presence of the venire: threatened his counsel with physical violence, walked into court with a lead pipe, stated he would commit perjury to gain an acquittal, and would tear the court apart. Only the first and third matters are supported in the record, and apparently Gavin had walked into the courtroom with some object (but not a lead pipe).
Leonard E. Curney, who served on the jury, read the latest Herald article and stated that he had formed the opinion that Gavin was guilty of committing the acts in the courtroom outside the jury's presence the previous day. He stated that he did not know why that opinion should influence his opinion in the case to be tried, that his expressed opinion on the courtroom conduct would "not necessarily" affect his determination in the case, and that he "will try" to "set aside that publicity" he has read. We have read, but do not need to reproduce here, the relevant questions and answers concerning the veniremen's statements that they would fairly try the case solely on the evidence presented at trial.
Prospective juror Eva Buck testified that she had read "all the newspaper articles" relating to Gavin. We have read, but do not need to reproduce here, the pertinent questions and answers relating to whether she had formed an opinion of guilt or innocence as to the charge of murdering the police officer. Defendant moved that she be excused for cause, and upon motion being denied, defendant exercised a peremptory challenge.
A defense motion for change of venue was later made and denied. A defense motion to sequester the jury was also later made and denied.
Appellant has not contended that the news items were inaccurate or slanted, but he has urged that their excessiveness precluded a fair trial. The news items in the record are virtually all straight news items reporting the facts, and those items which might be characterized as editorials do not resemble in the least those in the Sam Sheppard trial. Sheppard v. Maxwell (1966), 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600.
The decisive issue is whether or not the jury could base the verdict which they returned upon the evidence presented in court. A subordinate issue in this case is whether or not a great deal of straight news items about the defendant requires a change of venue. Two factors need to be considered in the resolution of this narrower question: first, the news items in the record reported criminal activities which were not the subject of the prosecution sub judice, but second, they reported other non-criminal activities which the defendant actually said or did and which were newsworthy.
An impartial jury is not required to be "totally ignorant of the facts and issues involved" *547 and may "have formed some impression or opinion as to the merits of the case ... particularly ... in criminal cases." Irvin v. Dowd (1960), 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751. Therefore, the existence of widespread publicity does not by the very fact itself compel the granting of a motion for a change of venue.
The law focuses upon the impartiality of the jury and vests in the judicial discretion of the trial court the initial determination of a motion for change of venue for alleged absence of impartiality. Therefore, a reviewing court will not upset the trial judge unless his abuse of discretion is manifest. See: Sheppard v. Maxwell, supra.
The defendant was found not guilty on the information which charged him with one count of robbery. This fact is not controlling on the point of prejudice, but does lend support to the conclusion which the trial court reached.
Next, we express the view that the conviction for assault with intent to commit murder in the first degree should be upheld.
Appellant was convicted under § 784.06 Fla. Stat., F.S.A.:
"Whoever commits an assault on another with intent to commit any felony punishable with death * * * shall be punished in the state prison * * *"
The felony charged was murder in the first degree, which is "punishable with death," as provided in § 782.04 Fla. Stat., F.S.A. Hence, by the terms of § 784.06 Fla. Stat., F.S.A., the appellant was properly convicted when the state proved that appellant made the assault with the intent to commit first degree murder.
The elements of the crime of assault with intent to commit first degree murder are: (1) an assault, (2) with the intent to kill, (3) with a premeditated design to effect death. First of all, "The actual pointing of the gun constituted the assault," Caraker v. State, Fla. 1955, 84 So.2d 50.
The second element, the intent to kill, is "the gist of the offense," Williams v. State, 41 Fla. 295, 26 So. 184 (1899). Since intent is a subjective matter, it must be determined by the surrounding circumstances and actual expressions of the appellant. No other source of knowledge exists, as was aptly stated in Caraker v. State, supra. The court said that such circumstances as pointing a gun at a vital area or expressions by the defendant that he would kill the assaultee were indicative of, and sufficient proof of, the intent to kill. Thus, unless the record was totally devoid of such evidence, the jury could determine the presence of intent.
In Wimbush v. State, 224 Md. 488, 168 A.2d 500 (Ct.App. 1961) this intent was found even under circumstances where the defendant was an excellent shot and had stated that he could have killed the person assaulted at any time.
While prior to the shooting there was absence of actual bodily injury, this argument is of little import. Courts have repeatedly held that a battery need not accompany the assault.
The final element is a premeditated design to effect death. No prescribed time is necessary over which this premeditation must form. Killins v. State, 28 Fla. 313, 9 So. 711 (1891). Likewise, the jury did find in the case at bar that the appellant had sufficient time for premeditation between the time the assault was first made and the time the appellant fled. The threat, by its very terms, extended until that time.
A criminal cannot require that an officer or security guard aid him in his escape or suffer death. Cf. Hairston v. *548 State, 54 Miss. 689, 28 Am.Rep. 392 (1877), with People v. Connors, 253 Ill. 266, 97 N.E. 643 (1912); Perkins, Criminal Law 504-505 (1957); 1 Wharton, Criminal Law and Procedure 331 (12th ed. 1957).
Here, appellant made a threat and possessed the means to carry out his threat. When appellant's actual assault was completed and this was coupled with his intent and premeditated design to kill the officer, appellant became properly amenable to punishment for the crime of assault with intent to commit first degree murder.
As to appellant's second point concerning whether a prima facie case was made out as to robbery, we find that it is without substantial merit. Hunt v. State, Fla.App. 1967, 200 So.2d 212.
We have considered the briefs and oral argument in the light of the record. No reversible error having been made to appear the convictions and sentences are affirmed.
Affirmed.
BARKDULL, C.J., concurs only in the judgment.