**Ernest John DOBBERT, Jr., Petitioner,**

v.

**Charles G. STRICKLAND, Jr., et al., Respondents.**

**No. 82–84–Civ–J–B.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Jan. 30, 1982.

**548**

Patrick D. Doherty, Raymond Gross, Clearwater, Fla., for petitioner.

Carolyn M. Snurkowski, Raymond Marky, Asst. Attys. Gen., Tallahassee, Fla., for respondents.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

This case is before the Court on the Petition for a Writ of Habeas Corpus by a Person in State Custody, filed herein on January 27, 1982, by petitioner Ernest John Dobbert, Jr. The following thirteen grounds are raised in the petition:

 A. Insufficiency of the Evidence

 B. Refusal to Consider Relevant Mitigating Circumstances

 C. Striking Aggravating Circumstances

 D. Refusal to Instruct Jury on a Lesser Included Offense

 E. The Supreme Court of Florida's Improper Ex Parte Consideration of Extra-Record Materials

 F. Systematic Exclusion of Death Scrupled Jurors

 G. Improper Overriding of Jury's Verdict of Life Imprisonment

 H. Unconstitutionality of Trial Court Overriding Jury Verdict of Life and Imposing a Sentence of Death

 I. Improper Restriction of Mitigating Circumstances

 J. Refusal to Sever Counts

 K. Improperly Admitted Prejudicial Evidence

 L. Improper Closing Argument

 M. Unconstitutional Aggravating Evidence

On January 27, 1982, this Court entered an order to show cause giving the respondents until 2:00 o'clock p.m., Friday, January 29, 1982, in which to respond to the petition for writ of habeas corpus and to show cause why the petition should not be granted. On that same date, the Court also entered an order setting a hearing on the petition and directing that the parties be prepared to present evidence at that time if deemed necessary. Finally, the Court issued a Writ of Habeas Corpus Ad Testificandum directing the appearance before the Court of Ernest John Dobbert, Jr., the petitioner, on January 29, 1982, at 2:00 o'clock p.m.

A hearing was held at 2:00 o'clock p.m. on January 29, 1982. Present at the hearing were Patrick D. Doherty and Raymond Gross, attorneys for the petitioner; Ernest John Dobbert, Jr., the petitioner; and Carolyn Snurkowski and Raymond Marky, Assistant Attorneys General, attorneys for the respondents. Shortly before the hearing, the petitioner filed a Motion for Discovery and the respondents filed a Motion for Judgment on the Pleadings and/or Motion for Summary Judgment.

The Court has reviewed the entire record, including Court's Exhibits 1–54.

This Opinion is organized as follows:

I. History

II. Evidence Adduced at Trial

III. Sentencing

IV. Other Grounds

Sections "A" and "K" of the petition will be discussed under Part II; sections "B," "C," "G," "H," "I," and "M" under Part III; and sections "D," "J," "L," "E," and "F" under Part IV.

## I. HISTORY

Petitioner was tried in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida, jury selection commencing March 18, 1974, on an amended four-count indictment charging petitioner with first degree murder (two counts) and child torture (two counts). On March 29, 1974, the jury returned a verdict finding the petitioner guilty of murder in the first degree, murder in the second degree, child abuse and child torture. The jury on March 30, 1974, following the penalty phase of the trial, recommended a life sentence and on April 12, 1974, the trial court sentenced the petitioner to death.

On April 25, 1974, a Notice of Appeal was filed in the Florida Supreme Court, which court on January 14, 1976, affirmed the April 12, 1974, judgment and sentence of the trial court. In this appeal, petitioner raised five (plus a part of six others) of the thirteen grounds he is raising in this petition.

Certiorari was taken to the Supreme Court of the United States and that court affirmed the lower courts on June 17, 1977. An application for relief to the Florida Supreme Court was made by petitioner pursuant to *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), and on March 31, 1978, the Florida Supreme Court directed the trial court to set aside the death sentence and afford the petitioner an opportunity to respond to the Presentence Investigation Report before resentencing.

The sentence was set aside on May 4, 1978, and on May 30, 1978, the petitioner responded to the Presentence Investigation Report, and thereafter requested a plenary sentencing hearing. The trial court granted the motion and a plenary sentencing hearing was held on June 22, 1978.

On June 30, 1978, the trial court sentenced petitioner to death and on June 30, 1978, a Notice of Appeal was filed in the Florida Supreme Court. The Florida Supreme Court affirmed the sentence on July 5, 1979. In this appeal the petitioner raised six of the thirteen grounds raised in this petition. Therefore, by that date eleven of the thirteen grounds presently pending before this Court had been ruled upon by the Florida Supreme Court and the petitioner had exhausted his state remedies as to those eleven grounds.

On January 6, 1982, the Governor of the State of Florida signed a death warrant in petitioner's case for February 2, 1982. On the same date the Governor of the State of Florida signed the warrant, petitioner filed a motion to vacate judgment and sentence, pursuant to Rule 3.850 Fla.R.Crim.P., in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida.

An evidentiary hearing on the motion to vacate judgment and sentence was held on January 12, 1982, and the trial court denied the motion to vacate judgment and sentence on January 14, 1982. On January 28, 1982, the Florida Supreme Court affirmed the trial court's order denying the motion to vacate judgment and sentence.

## II. EVIDENCE ADDUCED AT TRIAL

### A. *Insufficiency of the Evidence*

In section A of his petition, petitioner asserts that the evidence adduced at trial was insufficient as a matter of law to prove beyond a reasonable doubt the premeditation necessary to support a conviction for first degree murder. Petitioner has previously raised this issue in his direct appeal to the Florida Supreme Court, filed April 25, 1974. The court resolved the issue unfavorably to petitioner and affirmed the judg-

ment of the trial court. *Dobbert v. State*, 328 So.2d 433 (Fla.1976), *aff'd* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). Petitioner now seeks habeas corpus relief pursuant to 28 U.S.C. § 2254.

According to Fla.Stat. § 782.-04(1)(a)(1973), "[t]he unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed or any human being, . . . shall be murder in the first degree and shall constitute a capital felony . . . ."

■ Petitioner specifically challenges the sufficiency of the evidence establishing his "premeditated design." That term has been defined as follows:

A premeditated design to effect the death of a human being is a fully formed and conscious purpose to take human life, formed upon reflection and deliberation, entertained in the mind before and at the time of the homicide . . . . If the design to take human life was formed a sufficient length of time before its execution to admit of some reflection and deliberation on the part of the party entertaining it, and the party at the time of the execution of the intent was fully conscious of a settled and fixed purpose to take the life of a human being, and of the consequence of carrying such purpose into execution, the intent or design would be premeditated within the meaning of the law . . . .

*McCutchen v. State*, 96 So.2d 152, 153 (Fla. 1957). *See also Weaver v. State*, 220 So.2d 53, 59 (Fla.2d DCA), *cert. denied*, 225 So.2d 913 (Fla.1969). No prescribed length of time is necessary over which the element of premeditation must form. *Gavin v. State*, 259 So.2d 544, 547 (Fla.3d DCA), *cert. denied*, 265 So.2d 370 (Fla.1972). In fact, the period which must elapse between the formation of and the execution of the intent to take human life in order to render the design a premeditated one may be very short. The intent may exist for only a few moments and yet be premeditated. *McCutchen*, 96 So.2d at 153.

■ The standard by which this Court must evaluate the evidence in petitioner's state criminal trial to determine whether petitioner was accorded constitutional due process was recently formulated by the Supreme Court of the United States in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Jackson* held that a federal habeas court which is presented with a sufficiency of the evidence claim must grant relief if on the evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Id.* at 324, 99 S.Ct. at 2791. It has also been established that the *Jackson* standard should be applied retroactively to cases tried prior to the Supreme Court's decision. *Holloway v. McElroy*, 632 F.2d 605, 639 (5th Cir. 1980), *cert. denied*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981).

The Court begins its analysis by noting that under the *Jackson* standard it must consider all of the evidence in the light most favorable to the prosecution. This is appropriate because it gives "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Furthermore, the Court must look to both direct and circumstantial evidence in resolving the question of the sufficiency of the evidence underlying the jury's finding of premeditation. *See Pate v. Wainwright*, 607 F.2d 669 (5th Cir. 1979).

■ In the case at bar, the Court, after reviewing the entire record, finds ample evidence in the trial record to hold as a matter of law that a rational trier of fact could have found beyond a reasonable doubt that petitioner possessed the "premeditated design" to take human life at the time he murdered his daughter Kelly. As the question of premeditation necessarily involves the petitioner's state of mind, circumstantial evidence must be used by the jury in resolving the issue. *See Spinkellink v. State*, 313 So.2d 666, 670 (Fla.1975), *cert. denied*, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). Facts and circumstances from which a jury may lawfully infer premeditation include, among other

things, the method by which death is effected, the presence or absence of adequate provocation, previous difficulties between the parties, the nature and manner of the wounds inflicted and the actions of the accused prior to and subsequent to the homicide. *Larry v. State*, 104 So.2d 352 (Fla. 1958).

■ The record of petitioner's state court trial is replete with evidence sufficient to enable a rational trier of fact to permissibly conclude that premeditation existed. The jury heard petitioner's son, Ernest John Dobbert III (hereinafter "John"), relate the events immediately preceding Kelly's death. John testified that petitioner stepped back and kicked Kelly several times in the stomach while petitioner was wearing his shoes. (Tr. at 2112). As premeditation can be formed in a very brief period, *see McCutchen*, 96 So.2d at 153, the jury could have concluded that petitioner developed the premeditation immediately before the kicking began or even in the course of the several kicks petitioner visited upon his daughter. Certainly the magnitude of the injury inflicted upon Kelly by kicking her could have led the jury to believe that petitioner possessed the premeditated design to kill her. In fact, petitioner later described Kelly's appearance to his wife by stating that Kelly was so swollen that she appeared to be pregnant. (Tr. at 1493).

John also related to the jury that on the night Kelly died petitioner placed his hand around Kelly's neck and choked her until she became lifeless and did not move. (Tr. at 2113–14). John then described how petitioner asked him to determine whether Kelly's heart had stopped beating. (Tr. at 2114–15). John indicated that when he told petitioner that Kelly's heart was no longer beating petitioner put Kelly's body into a plastic garbage bag and eventually stored the body in the attic. (Tr. at 2115). Again, the jury could have found premeditation from this testimony. It is conceivable that the jury found that petitioner had the premeditated design to kill Kelly as he went towards her to grab her neck. The jury also could have found that petitioner acquired the premeditated design to take human life as he began to squeeze Kelly's neck. In any event, the jury could have permissibly·inferred that petitioner deliberated for the brief time required and intended to murder his daughter.

The jury, however, could have relied on testimony other than that described above. The jury may have found the change that occurred in petitioner's behavior around December of 1971 provided the necessary evidence of premeditation. Virginia Dobbert, petitioner's wife, described petitioner's earlier history of child abuse as one in which the children were not abused in ways that could be detected by outsiders. (Tr. at 1454). Furthermore, the children were allowed to go to school and were given medical care if necessary. Conversely, after Christmas of 1971, the Dobbert children were not permitted to go outside the house (Tr. at 1583, 1592, 2120), were not given medical care, and were severely abused in ways easily observable to an outsider. Shortly thereafter, Kelly was murdered by petitioner. This series of events could have caused the jury to conclude that petitioner had developed the premeditated design at the time when he refused to let the children out of the house.

The incidents described above comprise merely a fraction of the evidence from which the jury could have concluded that petitioner's murder of his daughter was done out of a premeditated design. The Court, in this habeas corpus review, will not list individually each piece of evidence or portion of transcript which could support the jury's finding. The important point is that a rational trier of fact could have found proof of premeditation beyond a reasonable doubt from many of the incidents related at trial or combinations thereof.

In sum, the Court finds as a matter of law that in considering the evidence adduced at petitioner's trial in the light most favorable to the prosecution, ample evidence exists to permit a rational trier of fact to conclude that petitioner possessed a premeditated design to murder his daughter, Kelly Ann Dobbert. Accordingly, peti-

tioner's contention to the contrary will be rejected and relief as to this ground of the petition will be denied.

### B. *Improperly Admitted Prejudicial Evidence*

Section K of the petition alleges that petitioner was denied his rights to a fair trial, to a reliable determination of guilt in a capital case and to due process of law as guaranteed by the sixth, eighth and fourteenth amendments to the United States Constitution. In support, petitioner states that evidence was improperly admitted in his state trial in the form of (a) testimony and correspondence in violation of the marital privilege and (b) evidence of collateral crimes.

■ At the outset, the Court notes that in habeas proceedings such as the instant case, "[t]he Fifth Circuit's resistance to challenges of evidentiary matters ... is firmly established." *Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir.), *cert. denied*, 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977). A violation of state evidentiary rules does not in and of itself invoke Section 2254 habeas corpus relief. The violation must be of such a magnitude as to constitute a denial of "fundamental fairness." *Bryson v. State of Alabama*, 634 F.2d 862, 864–65 (5th Cir. 1981). With this standard in mind, the Court now turns to the alleged violations in question herein.

■ Petitioner complains that the trial court incorrectly permitted the state to introduce the testimony of petitioner's wife and erroneously permitted the introduction of correspondence written by petitioner to his wife. Petitioner relies on the Florida state law privilege as the basis for his claim. The Court finds petitioner's reliance on said privilege to be misplaced. The Florida legislature specifically chose to abrogate the marital privilege in cases involving the abuse of children of such a marriage. Fla. Stat. § 828.041(10) (1973), the statute in effect at the time of petitioner's trial, provided that:

[The] husband-wife privilege, or any privilege except the attorney-client privilege[,] ... both as they relate to the competency of the witness and to the exclusion of confidential communications, shall not pertain in any civil or criminal litigation in which a child's neglect, dependency, abuse or abandonment is in issue or in any judicial proceedings resulting from a report submitted pursuant to this section.

Therefore, the evidence admitted purportedly in violation of the marital privilege was, in fact, properly admitted by the trial court.

The question remaining, then, is whether the evidence, even though properly admitted in state court, represents a denial of the constitutionally guaranteed fundamentally fair trial. Clearly, no such denial can be found. It is established that the marital privilege is a common law rule of evidence. The privilege is merely a matter of policy, it is not a constitutional right. *United States v. Hicks*, 420 F.Supp. 533, 536 (N.D.Tex. 1976). *See Hawkins v. United States*, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958). Therefore, no claim for habeas relief can be made.

■ A similar analysis applies to petitioner's claim that the trial court erroneously permitted the introduction of various collateral crimes. Petitioner's objection focuses on the testimony adduced establishing that petitioner had abused his children in many ways and at many times other than those charged in the indictment. Again, the Court finds that the introduction of such evidence at trial was not error. The Florida standard for admissibility of collateral crimes at the time petitioner stood trial was:

[E]vidence revealing other crimes is admissible if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried.

*Williams v. State*, 110 So.2d 654, 662 (Fla.), *cert. denied*, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); *Dean v. State*, 277 So.2d 13, 14 (Fla.1973). The Court finds that the evidence of collateral crimes presented in petitioner's trial was within the *Williams* rule.

Therefore, the only remaining question is whether the properly admitted evidence of collateral crimes represents an abrogation of petitioner's constitutional right to a fair trial. Again, it is apparent that this does not represent such a denial. In fact, Rule 404(b), F.R.Evid., allows for the admission into evidence of these types of collateral crimes. Accordingly, petitioner's claim in this respect will be denied.

### III. SENTENCING

As noted previously, six of the thirteen grounds for relief recited in the petition relate to sentencing. The Court will consider each of these grounds in turn.

### A. *Improper Restriction of Mitigating Circumstances*

■ Section I of the petition alleges that, "[a]t the time of Petitioner's trial, *Fla.Statute* § 921.141 violated the Eighth and Fourteenth Amendments to the United States Constitution by limiting mitigating circumstances to those enumerated in the statute." The Court finds that petitioner has exhausted his state remedies as to this ground. It was raised as point IV, Section A, of his second brief on appeal to the Supreme Court of Florida, and was found to be without merit. *Dobbert v. State*, 375 So.2d 1069, 1071–72 (Fla.1979), *cert. denied*, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).

This Court similarly finds this ground of the petition to be without merit. *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978), the case cited by petitioner in support of this ground of the petition, held that the sentencer in a capital case should not be statutorily precluded "from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." [emphasis in original]. Petitioner was sentenced, both in 1974 and 1978, under a statute which provided that in the sentencing proceeding, "evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant." Fla.Stat. § 921.141 (1973); Fla.Stat. § 921.141 (1977). (Tr. of First Sentencing Hearing, March 30, 1974, at 4–5; Tr. of Second Sentencing Hearing, June 22, 1978, at 119). Thus, the plain words of the statute permit the sentencer to consider "any matter that the court deems relevant"—whether it be mitigating or not. Certainly, the statute cannot be said to restrict the consideration of mitigating factors when it clearly allows consideration of any "relevant" matter. As such, the Court finds the instant statute to be entirely consistent with the requirements of *Lockett.* Petitioner has raised no other ground which would suggest that the statute is constitutionally infirm. Therefore, relief as to this ground of the petition must be denied.

### B. *Refusal to Consider Relevant Mitigating Circumstances*

■ Section B of the petition alleges that, "[t]he trial court in sentencing Petitioner to death, and the Supreme Court of Florida in its mandatory review of Petitioner's death sentence, refused to consider and give mitigating weight to relevant mitigating circumstances in Petitioner's case." The Court finds that petitioner has exhausted his state remedies as to this ground. It was raised as point IV, section B, of his second brief on appeal to the Supreme Court of Florida, and was found to be without merit. *Dobbert v. State*, 375 So.2d 1069, 1071–72 (Fla.1979), *cert. denied*, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).

The essence of petitioner's complaint as to this ground of his petition is that the sentencing judge improperly limited his consideration of mitigating factors to those specifically enumerated in Fla.Stat. § 921.-

141. Examination of the record, however, reveals that this was not the case. At the first sentencing hearing, petitioner was given an opportunity to present evidence relative to mitigating factors. He . chose to offer none at that time. (Tr. of First Sentencing Hearing, March 30, 1974, at 22). Petitioner was offered the same opportunity at the second sentencing hearing when the court granted him "a plenary (new, full) sentence proceeding." (Tr. of Second Record on Appeal to the Florida Supreme Court, at 73). The court's decision to permit petitioner to proceed with a plenary sentencing hearing set the tone for the entire proceeding. The court was very liberal with its evidentiary rulings, and the state refrained from making many objections available to it. (Tr. of Second Record on Appeal to the Florida Supreme Court, at 73; Tr. of Second Sentencing Hearing, June 22, 1978, at 145–46, 149). Petitioner responded to the opportunity made available to him by the grant of a plenary resentencing hearing by presenting extensive testimony from family members relative to his unhappy childhood and marriage, by personally testifying as to the mental and emotional strain he felt he was under during the time when the criminal activity occurred, by presenting various printed materials relative to "abusive parent syndrome," and by offering other letters and reports. (Tr. of Second Sentencing Hearing). The sentencing judge, in his order of June 30, 1978, indicated that he had considered all of this evidence before imposing the sentence of death. (Second Record on Appeal to the Florida Supreme Court, at 74). At no time in either of the two sentencing hearings did he prohibit petitioner from introducing any item of evidence.

Nevertheless, petitioner contends that the sentencing judge's statement that he considered all of the mitigating evidence offered at the hearing is belied by the organization of the sentencing order. The order is structured according to those mitigating factors which are specifically enumerated in the statute.

Simple examination of the order reveals that the sentencing judge did not limit himself to a mechanical application of the statutory factors. The order itself states that the judge applied the evidence to the statutory factors "where applicable." (Second Record on Appeal to the Florida Supreme Court, at 74). This would not preclude separate consideration of other factors.

*Eddings v. Oklahoma,* —— U.S. ——, 102 S.Ct. 869, 70 L.Ed.2d —— (1982), the case cited by petitioner, requires only that the sentencing judge consider in mitigation any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. It is within the province of the sentencer to determine the weight to be given to evidence of relevant mitigating circumstances. *Id.,* at 875–876. In some instances, such evidence may properly be given little weight. *Id.* at 876.

In the *Eddings* case, the Court held that the trial judge improperly excluded mitigating evidence from his consideration by giving it no weight. *Id.* at 875–876. The holding was based in large part on the particular relevance of the mitigating evidence introduced therein, i.e., evidence of a "turbulent family history, beatings by a harsh father, and severe emotional disturbance," in light of Eddings' youth. Here, petitioner, at the time of the crime, was a thirty-three-year-old adult, many years removed from the maltreatment he received at the hands of his father. He was not reacting under the immediate pressure of ongoing physical and mental abuse in the home. Eddings, in contrast, was a minor suffering the consequences of continuing mistreatment at the time when he committed the criminal act.

The fact that the trial judge in this case did not find that the evidence of petitioner's unhappy upbringing substantiated a finding of mitigation under the statutory factors does not indicate that he gave the evidence no weight at all. The concluding paragraphs of the sentencing order indicate that his sentence was based upon consideration of many factors, including his long experience as a criminal lawyer and judge, and

upon his conviction that the overwhelming weight of the aggravating factors mandated imposition of the death penalty.

As stated in a footnote to the *Eddings* opinion, "the ... death penalty statute permits the defendant to present evidence 'as to any mitigating circumstance.' *Lockett* requires the sentencer to listen." *Id.* at ——, n.10, 102 S.Ct. at 876, n.10. It is apparent that *Eddings*, like *Lockett*, requires no more than that the sentencer listen and consider the evidence. The *Eddings* court's comments relative to the weight to be given to mitigating evidence of the particular type raised therein must properly be limited to the facts of that case—the youthful offender who is subject to ongoing abuse in the home. The evidence which indicated that petitioner was acting under the domination of other persons at the time he committed the subject crimes was given little weight by the sentencing judge due to the fact that the persons who he claimed were dominating him, i.e., his father and his wife, were deceased and in jail, respectively. (Second Record on Appeal to the Florida Supreme Court, at 83). Further, petitioner's testimony that he committed the subject crimes in response to the pressures he felt as a result of trying to cope with the role of a single parent was given little weight in light of the fact that help was available, and petitioner refused it, choosing instead to compound his problems through deceit and subterfuge. (Second Record on Appeal to the Florida Supreme Court, at 76). The trial judge's careful analysis of these factors indicates that he did, in fact, consider all relevant mitigating circumstances before sentencing petitioner. The fact that he carefully considered the weight to be given to those circumstances in light of all of the evidence can only be said to support his decision. Therefore, relief as to this ground of the petition must be denied.

### C. *Striking Aggravating Circumstances*

██ On appeal to the Supreme Court of Florida from the second sentencing, the Florida Supreme Court held that the trial judge improperly found two of the four statutory aggravating circumstances. However, the Court upheld the sentence of death based upon the remaining two circumstances. Section C of the petition alleges that "[s]ince it cannot be determined to what extent these improper aggravating factors influenced the trial court's sentencing decision, Petitioner's sentence of death, based at least in part on these improperly considered factors, must be vacated." The Court finds that petitioner has exhausted his state remedies as to this ground. It was raised as point III, section B, of petitioner's second brief on appeal to the Florida Supreme Court. As stated previously, it was held insufficient to mandate reversal of the death sentence by the Florida Supreme Court. *Dobbert v. State*, 375 So.2d 1069, 1070–71 (Fla.1979), *cert. denied*, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).

*Stephens v. Zant*, 631 F.2d 397 (5th Cir. 1980), *modified*, 648 F.2d 446 (5th Cir. 1981), one of the two cases cited by petitioner in support of this ground of the petition, is inapposite. In *Stephens*, the jury's imposition of the death penalty was held incapable of review when it was determined by the appellate court that one of the statutory aggravating circumstances considered by the jury was unconstitutional. The sentence was incapable of review because the jury, in arriving at its sentence, did not make any specific finding as to which of the aggravating circumstances it found persuasive—there was no clue as to the jury's reasoning simply because there was no record of it. Similarly, *Henry v. Wainwright*, 661 F.2d 56 (5th Cir. 1981), the second case cited by petitioner in support of this ground of the petition, involved a situation where the jury instructions allowed consideration of non-statutory aggravating circumstances. The jury's sentence in *Henry*, like that in *Stephens*, was held incapable of review due to an inability to determine what weight the jury had given to the improperly considered factors. This, in turn, was due to the absence of a record of the jury's reasoning process.

Here, in contrast to *Stephens* and *Henry*, the Court is not faced with a lack of docu-

mentation as to the sentencing authority's reasoning. The sentencing judge supplied the requisite documentation by making written findings relative to each of the statutory aggravating circumstances. There is no indication that he considered improper aggravating circumstances as did the sentencer in *Stephens*. Further, there is no mystery cloaking the reasoning behind his decision as there was in *Henry*. The trial judge's rationale is fully and plainly set forth in the sentencing order. Neither this Court nor the Florida Supreme Court has been required to resort to the "guesswork" condemned in *Henry*. Therefore, relief as to this ground of the petition must be denied.

### D. *Unconstitutionality of Trial Court Overriding Jury Verdict of Life and Imposing a Sentence of Death*

■ Section H of the petition alleges that "[i]mposition of the death sentence on Petitioner after a jury life verdict based upon statutory findings of fact violates the integrity of the trial by jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, the double jeopardy clause of the Fifth Amendment, constitutes a cruel and unusual punishment in violation of the Eighth Amendment and violates the due process clause of the Fourteenth Amendment." The Court finds that petitioner has exhausted his state remedies as to this ground. It was raised as point IV of his third brief on appeal to the Florida Supreme Court and was found to be without merit. *Dobbert v. State*, 409 So.2d 1053 at 1058 (Fla.1982).

In *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the statutory sentencing scheme now at issue was reviewed by the U.S. Supreme Court and found to be constitutionally sound. One aspect of the statute which greatly influenced the court's approval of the statute was that it provided for imposition of sentence by the judge rather than by the jury. The court reasoned as follows:

[I]t has never [been] suggested that jury sentencing is constitutionally required.

And it would appear that judicial sentencing should lead, if anything, to even greater consistency in the imposition at the trial court level of capital punishment, since a trial judge is more experienced in sentencing than a jury, and therefore is better able to impose sentences similar to those imposed in analogous cases.

*Id.* at 252, 96 S.Ct. at 2966. In the instant case, it is evident that the sentencing judge drew on his long experience as a criminal lawyer and judge before imposing the death penalty. (Second Record on Appeal to the Florida Supreme Court, at 101–02). As such, he sought to achieve the consistency commended in *Proffitt*.

*Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the case cited by petitioner in support of this ground of the petition, is inapposite. In *Bullington*, the defendant was convicted of capital murder and sentenced by the jury to a term of life imprisonment. Defendant thereupon filed a motion for new trial, which motion was granted. At the second trial, the state filed a notice of intent to seek the death penalty. On appeal, the United States Supreme Court held that imposition of the death sentence at a second capital murder trial of a defendant sentenced to life imprisonment at the first trial by the jury in a state which uses a bifurcated sentencing proceeding is barred by the fifth amendment double jeopardy clause. The critical difference between this case and *Bullington* is that the role of the jury in the Florida statutory scheme is purely advisory; under the statutory scheme at issue in *Bullington*, the jury's recommendation was binding upon the judge. The advisory verdict of the jury cannot, therefore, be logically equated with an acquittal as was the jury's verdict in *Bullington*. Accordingly, relief as to this ground of the petition must be denied.

### E. *Improper Overriding of Jury's Verdict of Life Imprisonment*

■ Section G of the petition alleges that "[t]he trial court's overriding of the

jury's reasonably based verdict of life imprisonment and imposing the sentence of death on Petitioner, denied Petitioner's rights to a reliable, non-arbitrary sentencing determination, protection from cruel and unusual punishment and due process of law as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution." The Court finds that that petitioner has exhausted his state remedies as to this ground. It was raised as point IV of his third brief on appeal to the Florida Supreme Court and was found to be without merit. *Dobbert v. State*, 409 So.2d 1053 at 1058 (Fla.1982).

As noted previously, the Florida statute under which petitioner was sentenced was found to be constitutional in *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). The standard under which application of this statute is reviewed by the Florida Supreme Court was set forth in *Tedder v. State*, 322 So.2d 908, 910 (Fla. 1975). *Tedder* held that a jury's verdict of life imprisonment may not be overridden and a sentence of death imposed unless the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.

Petitioner contends that the sentencing judge, in imposing the death penalty upon him, violated the standard enunciated in *Tedder*. However, upon review, the Florida Supreme Court found that the sentencing judge had fully complied with *Tedder*. *Dobbert v. State*, 375 So.2d 1069, 1071 (Fla. 1979), *cert. denied*, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). Determination of state law by the courts of that state is binding upon federal courts, and consequently this Court is bound by the Florida Supreme Court's application of *Tedder* to the facts of this case. *Llamas-Almaguer v. Wainwright*, 666 F.2d 191 at 193 (5th Cir. 1982); *Hall v. Wainwright*, 493 F.2d 37, 39 (5th Cir. 1974). Therefore, relief as to this ground of the petition must be denied.

F. *Unconstitutional Aggravating Evidence*

█ Section M of the petition alleges that "[t]he construction of the aggravating

factor, 'especially heinous, atrocious and cruel' by the Florida Supreme Court is so broad as to make its application violative of the Eighth and Fourteenth Amendments to the United States Constitution." The Court finds that petitioner has exhausted his state remedies as to this ground of the petition. It was raised as point VI of his third brief on appeal to the Florida Supreme Court. It was found to be without merit by that Court. *Dobbert v. State*, 409 So.2d 1053 at 1058 (Fla.1982).

Petitioner has cited no authority in support of this ground of the petition. However, as noted in the respondent's response, the United States Supreme Court in *Proffitt v. Florida*, 428 U.S. 242, 255–56, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913 (1976), upheld the constitutionality of the Florida sentencing statute and the Florida Supreme Court's construction of it. The aggravating factor now challenged by petitioner was specifically discussed and approved in light of the construction placed upon it in *State v. Dixon*, 283 So.2d 1 (Fla.1973), *cert. denied*, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Therefore, relief as to this ground of the petition must be denied.

### IV. OTHER GROUNDS

A. *Refusal to Instruct Jury on a Lesser Included Offense*

█ In section D of the petition, petitioner contends that the trial court's refusal to instruct the jury on the lesser included offense of attempted first degree murder constitutes a denial of his right to a reliable determination of guilt and his right to due process of law. Petitioner unsuccessfully raised this issue in his direct appeal to the Supreme Court of Florida. *Dobbert v. State*, 328 So.2d 433 (Fla.1976), *cert. denied*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

█ The Court begins by noting that the Supreme Court of Florida in *Dobbert* held that any error in the trial court's refusal to give the requested instruction was harmless as a matter of law. 328 So.2d 433. This Court, of course, may not undertake

independently to interpret state law in this instance. The Court is bound by a state court's determination of its own law. *Hall v. Wainwright*, 493 F.2d 37, 39 (5th Cir. 1974).

The petitioner, however, asserts that by failing to instruct the jury on attempted murder the entire trial was rendered fundamentally unfair. Petitioner further argues that the failure here clearly rises to constitutional proportions, citing *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) in support.

*Beck* holds that a sentence of death may not constitutionally be imposed when the jury was not permitted to consider a verdict of guilt of a lesser included offense when the evidence would have supported such a verdict. *Id.* at 627, 100 S.Ct. at 2384. Thus, the pivotal question becomes whether the evidence would have supported the requested charge of attempted first degree murder. For the reasons that follow, the Court holds that the evidence presented to the jury at petitioner's trial would not have supported a verdict of attempted murder and, therefore, petitioner was not denied a constitutionally fair trial.

Clearly, the classic scenario of attempt—an act failing to accomplish its wrongful object—is not to be found in the case at bar. There is no question that Kelly Ann Dobbert is dead. Consequently, some other theory of attempt, supportable by the evidence, must have existed in order to grant the relief requested by petitioner.

Both in this petition and at oral argument before this Court, petitioner has advanced but one theory under which he contends an instruction on attempted first degree murder was supportable by the evidence adduced at trial. Petitioner avers that Kelly died as a result of choking on a piece of food which had lodged in her throat and that such choking constituted an intervening cause of death sufficient to relieve petitioner from liability for Kelly's death.

Petitioner's theory was not so articulated until petitioner testified at his second sentencing hearing, held in 1978, some four years after his trial. Quite clearly, the jury in petitioner's trial in 1974 was not privy to the testimony given by petitioner in 1978. This Court must look only at the evidence that was before the trial jury.

Even if the cross-examination of John Dobbert at trial had supported the present position of the petitioner, and the Court finds that it does not, especially in light of the entirety of the testimony, petitioner's theory fails. The uncontradicted evidence presented at trial was that Kelly began to vomit from the choking only after petitioner had grabbed her by the neck and strangled her. This is true even under the scenario urged upon the Court by petitioner. It is well-established under Florida law that the cause of death, even if it occurred in the manner described by petitioner in 1978, does not constitute an intervening cause of death sufficient to relieve petitioner from culpability. *See Swan v. State*, 322 So.2d 485 (Fla.1975); *Williamson v. State*, 92 Fla. 1094, 111 So. 245 (1927). Therefore, the Court finds as a matter of law that the evidence presented in petitioner's trial failed to support a jury instruction on the lesser included offense of attempted first degree murder. Petitioner's claim as to this ground of the petition will be denied.

### B. *Refusal to Sever Counts*

In section J of the petition, petitioner asserts that he was denied his rights to a fair trial, to reliability in the determination of guilt and to due process of law by virtue of the trial court's refusal to sever the various counts of the indictment into separate proceedings. Petitioner has previously presented this argument to the Florida Supreme Court in *Dobbert v. State*, 328 So.2d 433 (Fla.1976), *cert. denied*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

Initially, the Court notes that under Florida law, as under federal law, the question of whether to grant a motion for severance of counts rests within the sound discretion of the trial court and will be reversed only upon a clear showing that the trial court abused its discretion. *Alvarez v. Wainwright*, 607 F.2d 683, 685 (5th Cir. 1979).

■ In this habeas attack of the trial court's refusal to grant a severance, the simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process. *Id.* To find that a trial was rendered fundamentally unfair, as a minimum, petitioner must demonstrate prejudice sufficient to warrant relief under F.R.Cr.P. 14 or its state counterpart—Fla.R. Crim.P. 3.152(a)(2). *Id.*

■ The Court finds that no showing sufficient to warrant habeas corpus relief has been put forth by petitioner, nor is the necessary prejudice apparent to the Court. The burden is on the petitioner in a habeas corpus claim. Therefore, petitioner's claim as to this ground of the petition will be denied.

## C. Improper Closing Argument

In section L of the petition, petitioner seeks relief in this habeas action contending that the prosecutor's closing argument at the guilt/innocence phase of petitioner's trial was so inflammatory and prejudicial as to render the trial fundamentally unfair. This argument was raised by petitioner in his direct appeal to the Florida Supreme Court. *Dobbert v. State*, 328 So.2d 433 (Fla.1976), *cert. denied*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

The Court begins its analysis by noting that counsel for petitioner raised only one objection during the prosecutor's closing argument. That objection was directed specifically at one statement of the prosecutor. No general objection to the closing argument, nor any motion for mistrial was made on the basis of the argument being overly inflammatory or prejudicial. This fact alone is sufficient to require the Court to deny petitioner's claim as to the entire closing argument, save for the one statement specifically objected to by petitioner's counsel.

■ The Florida courts have long required the making of a contemporaneous objection in order to preserve the issue for subsequent review. *Clark v. State*, 363 So.2d 331 (Fla.1978). Petitioner, therefore, has procedurally defaulted as to all statements to which no objection was raised. Generally, a procedural default serves to bar subsequent review. In order to overcome the default, petitioner must demonstrate both cause for the default and resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *McKinney v. Estelle*, 657 F.2d 740, 742 (5th Cir. 1981). Here, no showing of cause for the procedural default has been made, nor is any legitimate justification apparent to the Court. Thus, the Court need consider only the portion of the closing argument to which counsel raised an objection.

■ The remarks which drew objection at trial pertained to petitioner's failure to present a certain witness to support petitioner's story of how his son, Ryder, was injured. The specific language is:

> One of two things occurred. Either Ryder's ultimate death was related to that particular head injury, and the doctors are mistaken because of complications arising, and I don't think you have to rule this definitely in or out, Doctor Chandler said anybody receiving a type of injury like Ryder, he said Ryder would be more susceptible of dying from further head injury. That's an important fact. If you have been sick, further sickness will do more harm. There is no question as to how Ryder received the head injury. It was from defendant.
>
> Like we subpoena witnesses here, in one of the defendants' statements he said that some boy with a cast was playing with him on the truck. Why didn't the defense attorney present that boy with the cast if that was true?

(Tr. at 2438–39). At that point counsel for petitioner interposed his objection. The objection was denied and the prosecutor proceeded with his argument.

■ In reviewing this statement in a habeas proceeding, the Court does not sit as a "super state supreme court" to review errors under state law governing the limits of permissible argument. *Houston v. Es-*

*telle*, 569 F.2d 372, 380 (5th Cir. 1978). Rather, the Court must evaluate the alleged misconduct to determine only whether the prosecutor's comments were so prejudicial as to render the trial fundamentally unfair in violation of the due process clause. *Easter v. Estelle*, 609 F.2d 756, 760 (5th Cir. 1980).

Even if petitioner's objection to the above-printed statement is that it improperly called attention to the fact that he did not testify, consideration of the statement in question in relation to the test provided in *Frank v. Blackburn*, 605 F.2d 910, 914 (5th Cir. 1979), *vacated in part on other grounds*, 646 F.2d 873 (5th Cir. 1980), *modified*, 646 F.2d 902 (5th Cir. 1981), causes the Court to conclude that petitioner's claim is wholly without merit.

Furthermore, the Court notes that it has reviewed the prosecutor's entire closing remarks in the context of the entire trial, *see Cronnon v. State of Alabama*, 587 F.2d 246, 251 (5th Cir.), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979), and concludes that even had the contemporaneous objection rule been satisfied, the prosecutor's closing argument contains nothing which caused petitioner to receive a fundamentally unfair trial. Consequently, petitioner's claim for relief under this ground of the petition will be denied.

D. *The Supreme Court of Florida's Improper Ex Parte Consideration of Extra-record Materials*

 Section E of the petition alleges that, "[a]t the time of Petitioner's appeal of his conviction and death sentence to the Supreme Court of Florida, that court was engaged in the regular practice of soliciting and receiving extra-record psychiatric, psychological and other reports from state agencies concerning the mental condition and background of death-sentenced appellants." Petitioner alleges that this practice violated his "rights under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States; the right to counsel as guaranteed by the Sixth and Fourteenth Amendments to the Consti-

tution of the United States; the right to a reliable and non-arbitrary determination of sentence as required by the Eighth and Fourteenth Amendments to the Constitution of the United States; the privilege against self-incrimination as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States; the right to confrontation as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States; and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States." The Court finds that petitioner has exhausted his state remedies as to this ground of the petition. It was raised as point V of his third brief on appeal to the Florida Supreme Court and was found to be without merit. *Dobbert v. State*, 409 So.2d 1053 at 1058 (Fla.1982).

The identical claim has been presented to other federal courts in capital cases. *Foster v. Strickland*, 517 F.Supp. 597 (N.D.Fla. 1981); *Witt v. Wainwright*, No. 80–545–T–GC (M.D.Fla. May 14, 1981). They have concurred with the Florida Supreme Court's analysis of this issue, which appears in *Brown v. Wainwright*, 392 So.2d 1327 (Fla. 1981). There, the Court held that a claim for relief had not been stated because its function as a reviewer rather than a sentencer made its consideration of such documents irrelevant. Thus, *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), which held that it is a denial of due process for the trial court to impose a sentence of death where it is based, at least in part, on information which the defendant has no opportunity to deny or explain, is inapposite. As noted previously, petitioner was granted a plenary resentencing hearing to remedy any possible violations of *Gardner*. (Tr. of Second Sentencing Hearing, June 22, 1978). He has no further entitlement to relief under that case.

 In further support of its holding herein, the Court notes that there is no federal constitutional right to state appellate review of state criminal convictions. *Estelle v. Dorrough*, 420 U.S. 534, 536–37, 95 S.Ct. 1173, 1175, 43 L.Ed.2d 377 (1975);

*Joensen v. Wainwright*, 615 F.2d 1077, 1078 (5th Cir. 1980). Thus, petitioner's claim fails to rise to constitutional dimensions, and no relief can be accorded under this ground of the petition.

### E. *Systematic Exclusion of Death Scrupled Jurors*

██ In section F of the petition, petitioner asserts that he was denied his right to a jury composed of a representative cross-section of the community, and his right to due process of law because the state systematically excluded death scrupled veniremen from petitioner's jury. Petitioner previously raised this issue in a motion to vacate judgment filed pursuant to Fla.R.Crim.P. 3.850. Petitioner's claim was decided unfavorably to him by the Supreme Court of Florida in *Dobbert v. State*, 409 So.2d 1053 (Fla.1982). For the reasons that follow, this Court must also deny petitioner's claim.

The Supreme Court of Florida, in *Maggard v. State*, 399 So.2d 973, 975 (Fla.1981), recently reaffirmed Florida's law requiring that a party must object at trial to the jury panel selected in order to preserve his claim for further review. This form of contemporaneous objection rule has repeatedly been held constitutional. *Huffman v. Wainwright*, 651 F.2d 347, 349 (5th Cir. 1981). Furthermore, it is undisputed that petitioner made no attempt to raise such an objection at the time of his trial. Given this, it would appear as if petitioner's claim is barred from further review.

An exception to this waiver-by-failure-to-challenge rule exists, however, where the failure was for cause and the defendant can show that prejudice resulted from the constitutional defect. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Here, neither cause nor prejudice has been shown. Petitioner has not presented any justification for this failure to object at trial to what he now considers a jury selected by unconstitutional means. Neither has a showing of prejudice been made. The jury that remained after the state had completed its alleged systematic

exclusion of death scrupled jurors recommended a sentence of life imprisonment for petitioner. The *Sykes* test has not been met.

Petitioner's answer to this is that the Supreme Court of Florida considered his claim on the merits, thereby negating the impact of the *Sykes* rule. The Court disagrees with petitioner's reading of the Supreme Court's holding in *Dobbert v. State*, 409 So.2d 1053 (Fla.1982). The Court unequivocally held that "we find that Dobbert has waived any right to challenge the jury based on the rationale of *Witherspoon* by his failure to object to the State's peremptory challenges to the jury panel." *Id.*, at 1057. There can be no doubt that the procedural rule was applied in state court. The fact that the Supreme Court of Florida engaged in further discussion on the merits does not preclude the Court from denying habeas corpus relief under the contemporaneous objection rule of *Sykes*. In fact, the Court is compelled to deny such relief. *Ratcliff v. Estelle*, 597 F.2d 474, 475–76 (5th Cir.), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979).

Moreover, the Court also holds that petitioner is entitled to no habeas corpus relief even if the *Sykes* rule does not apply to the instant case. Petitioner's assertion that a systematic exclusion of death scrupled jurors states a constitutional violation redressable by means of habeas corpus is based largely on the holding of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), and to a lesser extent on the holding of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Neither case controls the question now before the Court. *Witherspoon* is clearly inapplicable to the case at bar in that it addressed the standard for dismissing a juror for cause based on his convictions concerning the death penalty. Here, the allegation is that jurors were systematically removed by the state through the use of its peremptory challenges. *Compare Burns v. Estelle*, 592 F.2d 1297 (5th Cir. 1979), *rehearing en banc*, 626 F.2d 396 (5th Cir. 1980); *Alderman v. Austin*, 663 F.2d 558 (5th Cir. 1981) (stan-

dard for properly dismissing juror for cause different from that for peremptory challenge).

*Swain* addressed the constitutionality of the systematic exclusion of blacks from jury panels. In finding that form of exclusion unconstitutional, the Court limited itself to the question of racial discrimination. That holding cannot, even by analogy, be considered controlling here. *Swain* could be a reflection of the court's decision to give racial discrimination special constitutional status.

Petitioner in oral argument stated that the state should not have the right to systematically exclude jurors due to their mental attitude and that a defendant has a right to have a jury composed of jurors having attitudes similar or sympathetic to his. This Court is aware of no decision extending *Swain* along the lines suggested by petitioner. This Court, as well, declines to do so. Therefore, the Court finds no basis for petitioner's contention that the state's systematic exclusion of death scrupled jurors rises to constitutional proportions. Accordingly, petitioner's claim will be denied.

### F. *Motion for Discovery*

▮ The petitioner has repeatedly stated that he has not been dilatory in prosecuting this case. The Court notes that on January 14, 1976, the petitioner had exhausted his state remedies in over five of the grounds he raised in the present petition. He waited six years to bring these before this Court and then filed them less than a week before the date set for execution. All but two of the remaining eight grounds set forth in the present petition could have been brought before this Court after July 5, 1979, when the petitioner exhausted his state remedies as to these grounds. He waited two and one-half years to bring these before the Court and then filed them less than a week before the date set for execution.

The remaining two grounds are the subject of the Motion for Discovery. The petitioner has stated that he has been analyzing one of the two grounds for three years (Systematic Exclusion of Death Scrupled Jurors) yet he waited until the day the Governor of the State of Florida signed the death warrant before he filed that claim before the state court. The second ground (The Supreme Court of Florida's Improper Ex Parte Consideration of Extra-Record Materials) has been known to petitioner since he became a part of *Brown v. Wainwright*, 392 So.2d 1327 (Fla.1981), yet once again he waited until the day the Governor of the State of Florida signed the death warrant before filing that claim in state court.

At the last minute, the petitioner wishes to begin extensive discovery by deposing the entire Supreme Court of the State of Florida and many other witnesses. The Court, in its order setting this hearing, gave petitioner the opportunity to offer evidence. The petitioner has waited until the last minute to file his claim and in order to obtain a further delay has filed this Motion for Discovery.

Both of the grounds to which the Motion for Discovery pertain have been found by this Court to be without merit. This conclusion was reached bearing in mind what evidence most favorable to the petitioner might be disclosed with further discovery. Such evidence would not change the conclusions of law reached in this Opinion. The Court will deny the Motion for Discovery.

ORDERED:

1. That the Court will on this date enter a dismissal of this case.

2. Petitioner's Motion for Discovery, filed herein on January 29, 1982, is denied.

3. That respondents' Motion for Judgment on the Pleadings and/or Motion for Summary Judgment, filed herein on January 29, 1982, is hereby rendered moot, and the Court will on this date enter judgment for respondents.

4. That a certificate of probable cause, pursuant to 28 U.S.C. § 2253, is hereby entered. The Court has previously found petitioner to be insolvent. The petitioner may proceed *in forma pauperis* without the

filing of the affidavit prescribed by 28 U.S.C. § 1915. This is done solely for the purpose of allowing the petitioner to proceed through the appellate process and is in no way a reflection of any doubt on the Court's part as to the correctness of the order entered herein.