409 So.2d 1053 (1982)
Ernest John DOBBERT, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 61606.
Supreme Court of Florida.
January 28, 1982.
*1054 Patrick D. Doherty of Gross & Doherty, Clearwater, for appellant.
Jim Smith, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
On January 6, 1982, Governor Graham signed a death warrant for Ernest John Dobbert, and on January 7, 1982, Dobbert filed a motion to vacate his death sentence. He later filed an addendum to his motion to vacate, and after a hearing, the trial court denied Dobbert's motion. Dobbert now appeals the denial of his motion to vacate and requests this Court to enter a stay of execution. Finding that the trial court correctly denied Dobbert's motion to vacate, we affirm. We also deny his motion for stay of execution.
In April 1974, Dobbert was convicted of the first-degree murder of his nine-year-old daughter and was sentenced to death for this murder although the jury recommended life imprisonment. He was also convicted at that time of the second-degree murder of his seven-year-old son, child torture of another son, and child abuse of another daughter. His convictions and sentences were affirmed by this Court. Dobbert v. State, 328 So.2d 433 (Fla. 1976). Our judgment was affirmed by the Supreme Court of the United States. Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).
Subsequently, this Court entered an order pursuant to Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), asking the trial judge whether he had imposed sentence on the basis of any information not known to Dobbert. Dobbert asserted he had not been furnished a copy of the presentence investigation report. By order entered March 31, 1978, we relinquished jurisdiction to the trial court with directions to vacate the death sentence and to give Dobbert an opportunity to respond to this report. After giving Dobbert another plenary sentencing hearing, the trial court resentenced him to death. He appealed, and we again affirmed the sentence of death. Dobbert v. State, 375 So.2d 1069 (Fla. 1979). Certiorari was denied by the Supreme Court of the United States. 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). Dobbert was originally scheduled to be executed on July 22, 1981, but the Supreme Court stayed execution pending its disposition of writ of certiorari from our decision in Brown v. Wainwright, 392 So.2d 1327 (Fla. 1981), to which Dobbert was a party. Certiorari was denied by the Supreme Court on November 2, 1981. Brown v. Wainwright, ___ U.S. ___, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981).
In his motion to vacate his death sentence, Dobbert alleged as grounds for relief that he was denied his sixth amendment right to a fair trial because the State, in the Fourth Judicial Circuit, had systematically *1055 exercised peremptory challenges to exclude persons who had scruples against imposition of the death penalty; that the Supreme Court of Florida may have improperly considered psychiatric examinations in some death appeals; that the Supreme Court of Florida's construction of the aggravating circumstance of "heinous, atrocious, or cruel" is overbroad, thereby rendering its application unconstitutional; that the trial court considered nonstatutory aggravating factors; and that the imposition of the death penalty in his case constituted cruel and unusual punishment. In an addendum to his motion to vacate, Dobbert alleged that the trial court erred in imposing the death sentence after a jury recommendation of life.
In denying Dobbert's motions, the trial court held, as to his sixth amendment claim, that neither the record nor pleadings take this case beyond the scope of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), and that Dobbert did not demonstrate prejudice. Relative to our alleged consideration of psychiatric reports, the trial court held that this point was resolved adversely to Dobbert in Brown v. Wainwright. The trial court also held that the validity of the aggravating circumstance of heinous, atrocious, or cruel had been addressed by this Court in the direct appeals, that a reading of the trial court's sentencing order belied Dobbert's contention that it had considered nonstatutory aggravating factors, and that this Court had already determined that imposition of the death penalty in Dobbert's case does not constitute cruel and unusual punishment. As to the issue raised in the addendum, the trial court ruled that Dobbert was not entitled to post-conviction review of the jury override.
Before this Court, Dobbert initially contends that he was denied due process of law and his sixth amendment right to a jury composed of a fair cross section of the community because, he alleges, a study conducted by Professor Winick of the University of Miami School of Law shows a pattern of abuse by the state attorney's office in the exercise of its peremptory challenges. He claims that the study shows that the state attorney's office in the Fourth Circuit has systematically used its peremptory challenges to excuse prospective jurors who are "death scrupled," that is, those who expressed some opposition to the death penalty. Professor Winick testified at the hearing on the motion to vacate that he had conducted an empirical study of the jury selection practices by prosecutors in capital cases in the Fourth Circuit from 1974 through 1978 to determine how the prosecutors used their peremptory challenges in the formation of a capital jury. He claimed that the voir dire of 1,103 prospective jurors in twenty-seven cases was examined. Of these 1,103, 146 indicated disagreement with or problems with the death penalty and were classified by Professor Winick as "death scrupled." Of the 1,103, 587 were subject to prosecutorial peremptory challenge, and of this 587, 51 were, according to Professor Winick, "death scrupled." Of these 51, 13 actually served on a jury.
Dobbert's argument that he was denied his right to due process of law by the State's exercise of its peremptory challenges is predicated on an attempted synthesis of Swain v. Alabama and Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
In Swain v. Alabama, a Negro convicted of rape by an all-white jury appealed his conviction, contending that there had never been a Negro on the petit jury in either a civil or criminal case in Talladega County, Alabama, and that in criminal cases prosecutors had systematically exercised their strikes to achieve this result. Swain had objected to the jury selection in the trial court immediately after the jury was selected and had moved to have the jury declared void on fourteenth amendment grounds. The Supreme Court held that the striking of Negroes in a particular case is not a denial of equal protection. It dealt at great length with the nature, history, and importance of the right to exercise peremptory challenges which it described as an integral part of trial by jury. The peremptory challenge, it explained, is one exercised without a reason stated, without inquiry, and without *1056 being subject to the court's control. It permits rejection for real or imagined partiality not easily designated or demonstrated and is not infrequently exercised on grounds not normally thought to be relevant to legal proceedings, such as race, religion, nationality, or affiliations of people summoned. This is the nature of the peremptory challenge, and this is as it should be to guarantee the fairness of the trial by jury. The Supreme Court further explained:
In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, pro tanto, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterward. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.
In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it.
380 U.S. at 221-22, 85 S.Ct. at 836-37.
The Supreme Court, however, viewed the broader issue in Swain relating to the alleged systematic use over a period of years of peremptory challenges to excuse jurors on the basis of race in a somewhat different light. Although finding that the prosecutor has broad discretion in the exercise of his peremptory challenges, it concluded:
We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. Cf. Yick Wo v. Hopkins, 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220]. In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenge are being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify.
380 U.S. at 223-24, 85 S.Ct. at 837-38 (emphasis supplied). The Court held, however, that the record before it was not sufficient to demonstrate that the rule was violated *1057 by the peremptory system as it operates in Talladega County.
Although Swain involved a contention of discrimination based on race, Dobbert seeks to extend the concepts enunciated in Swain relative to the prosecutor's abuse of the peremptory challenges to ideological groups as well. He attempts to apply the Swain test in combination with Witherspoon v. Illinois and argues that the Winick study meets the Swain test.
In Witherspoon, the Supreme Court held that a death sentence cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced their general objections to the death penalty or expressed scruples against its infliction. The Court in that case was reviewing Illinois' procedure which gave the prosecution unlimited challenges for cause to exclude those jurors who might hesitate to return the death sentence.
The general rule applied by the Supreme Court in Swain is that peremptory challenges may be exercised freely and without explanation or justification. The Court recognized that there may be an exception to the general rule where, over a period of time, the State has systematically exercised its peremptory challenges to exclude all Negroes from juries for a reason wholly unrelated to the outcome of the particular case on trial and where the peremptory system is being used to deny Negroes the same right to participate in the administration of justice enjoyed by the white population. There is nothing to indicate, however, that the Supreme Court would extend the exception made by Swain based on this systematic exclusion of Negroes to other systematic exclusions not based on prejudice. We need not resolve that issue in this case because, even if we were to conclude that the Swain exception was applicable in this type of case, Dobbert has failed to demonstrate that either his right to due process or his sixth amendment right to an impartial jury has been violated. We hold that neither the record nor the pleading, including the study by Professor Winick, are sufficient to move this case beyond the general rule of Swain v. Alabama.
Furthermore, we find that Dobbert has waived any right to challenge the jury based on the rationale of Witherspoon by his failure to object at trial to the State's peremptory challenges to the jury panel. Recently, in Maggard v. State, 399 So.2d 973 (Fla. 1981), we considered the necessity for an objection when a Witherspoon violation is claimed, and we explained the reason for requiring an objection. We pointed out that this requirement is entirely reasonable in view of the fact that it is certainly possible that defendant himself did not want a particular juror to serve and was perfectly content with the State's peremptory challenge of a "death-scrupled" juror so that he would not have to exercise one of his peremptory challenges.
Without objection having been made, we have no way of knowing whether Dobbert was satisfied with the dismissal of these prospective jurors as a result of the State's use of its peremptory challenges. In fact, in this case, the record of the voir dire reveals that Dobbert himself peremptorily challenged two "death-scrupled" jurors and agreed with the State that a third should be dismissed for cause. If the State had peremptorily challenged these jurors, Dobbert would not have had to use two of his challenges.
Also, although we conclude that Dobbert has failed to demonstrate that any of his constitutional rights were violated by the State's exercise of its peremptory challenges, we note that, in any event, he was not prejudiced. The jury in his case recommended life. He claims that had there not been these peremptory challenges of "death-scrupled" jurors, the jury may have returned a unanimous life recommendation rather than a 10:2 life recommendation. This argument is frivolous. Florida's death penalty statute states that the jury's life or death recommendation shall be by a majority of the jury. No different test is applied in imposing and reviewing a sentence of death after a 10:2 recommendation of life *1058 than is used in imposing and reviewing a sentence of death after a unanimous jury recommendation of life. In fact, in most cases, the trial judge and this Court know only that a majority of the jury has recommended life or death. Nothing more is required because it is not material what number of the majority of the jury recommends a sentence of death or recommends a sentence of life.
Dobbert again attempts to challenge the trial court's override of the jury's life recommendation. We have already resolved this issue against Dobbert. In Dobbert v. State, 375 So.2d 1069 (Fla. 1979), we applied the test of Tedder v. State, 322 So.2d 908 (Fla. 1975), and concluded that the facts suggesting the death sentence in Dobbert's case are so clear and convincing that virtually no reasonable person could differ. Dobbert's reliance upon Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), is without foundation. Because of the substantial differences between the sentencing procedures of Florida and Missouri, Bullington is clearly distinguishable from the present case.
He next contends that certain psychological reports were considered by this Court in some death cases and not in others. He then alleges that our failure to consider his favorable psychological report violated his right to equal protection of the laws. This issue has already been resolved against Dobbert in Brown v. Wainwright, in which Dobbert was a named party. In Brown, we explained that our role after the death sentence is imposed by the trial court is merely to review and is not to impose the death sentence, and we said:
Even if petitioners' most serious charges were accepted as true, as a matter of law our view of the non-record information petitioners have identified is totally irrelevant either to our appellate function in capital cases as it bears on the operation of the statute, or to the validity of any individual death sentence.
... .
The record of each proceeding, and precedent, necessarily frame our determinations in sentence review. Our opinions, of course, then expound our analysis. Factors or information outside the record play no part in our sentence review role. Indeed, our role is neither more nor less, but precisely the same as that employed by the United States Supreme Court in its review of capital punishment cases.
392 So.2d at 1331-32.
We also reject Dobbert's contention that the aggravating circumstance of heinous, atrocious, or cruel has been rendered void for vagueness by its application. As recently as 1979, we have reaffirmed the trial court's finding that Dobbert's "shockingly evil and unnecessarily torturous" murder of his nine-year-old daughter was especially heinous, atrocious, or cruel. Dobbert v. State, 375 So.2d at 1071.
Dobbert's contention that the court considered nonstatutory aggravating factors is a matter that could have and should have been raised on direct appeal and is not a proper subject matter for post-conviction relief. Moreover, we agree with the trial court's holding in its order denying the motion to vacate that the sentencing order of the trial court belies this contention.
Finally, we find no merit to Dobbert's claim that imposition of the death penalty in his case constitutes cruel and unusual punishment. On direct appeal of his sentence of death, we held that the death penalty was warranted in light of the totality of the circumstances. Dobbert v. State, 375 So.2d at 1071.
Accordingly, finding no error in the trial court's denial of the motion to vacate, we affirm, and we deny the motion for stay of execution.
No motions for rehearing will be entertained.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.