438 So.2d 480 (1983)
Oscar L. ANDREWS, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-1180.
District Court of Appeal of Florida, Third District.
September 27, 1983.
Weiner, Robbins, Tunkey & Ross and William R. Tunkey and Geoffrey C. Fleck, Miami, for appellant.
Jim Smith, Atty. Gen., and Theda R. James, Asst. Atty. Gen., for appellee.
Before NESBITT, FERGUSON and JORGENSON, JJ.
PER CURIAM.
The principal question in this appeal presents the same issue as that framed in Neil v. State, 433 So.2d 51 (Fla. 3d DCA 1983). We affirm on the authority of Neil and consistent with that decision certify to the supreme court the following question of great public importance:
Absent the criteria established in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), may a party be required to state the basis for the exercise of a peremptory challenge?
We have considered the other issues raised by this appeal and find them to be without merit.
Affirmed. Question certified.
FERGUSON, Judge (specially concurring)
This court in Neil v. State, 433 So.2d 51 (Fla. 3d DCA 1983), oblivious to the immediate social impact, has raised the peremptory challenge, a procedural tool without constitutional foundation, see Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965),[1] to a position of such jurisprudential eminence that it now transcends the right of any minority group not to be systematically excluded from participation in the administration of criminal justice  a right which is constitutionally guaranteed. Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (systematic exclusion of women from juries is unconstitutional because it violates the sixth amendment's requirement that a jury be chosen from a representative cross section of the community).
*481 Neil is wrong. Swain v. Alabama, contrary to the holding in Neil, is not binding on us because when it was decided in 1965 under the equal protection clause of the fourteenth amendment to the United States Constitution,[2] the sixth amendment right to a fair trial by an impartial jury, the relevant constitutional principle relied upon by appellant, had not yet become binding on the states through the fourteenth amendment's due process clause. The sixth amendment right was not incorporated in the fourteenth amendment until three years after Swain, in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).[3] Neither does Hoffman v. Jones, 280 So.2d 431 (Fla. 1973) (intermediate appellate courts cannot depart from controlling precedent) require us to abide by Swain v. Alabama because the question has never been addressed by the Florida Supreme Court.
As noted by the Neil court, the Florida Supreme Court has, in two cases, reaffirmed Swain's principles, but those cases do not support the Neil holding. In the first case cited by Neil, Francis v. State, 413 So.2d 1175 (Fla. 1982), the issue was whether the defendant's involuntary absence from the courtroom during the exercise of peremptory challenges was fundamentally unfair. The Florida Supreme Court cited Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894) and Lewis v. *482 United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), cases relied upon in Swain v. Alabama, merely as authority for the principle that the peremptory challenge is one of the most important rights secured to a defendant. In Dobbert v. State, 409 So.2d 1053 (Fla. 1982), the issue before the court was whether the systematic exercise by a prosecutor of peremptory challenges to exclude persons who had scruples against imposition of the death penalty was violative of the defendant's right to due process or his sixth amendment right to an impartial jury. The court, in rejecting appellant's "attempted synthesis of Swain v. Alabama," noted that there is nothing to indicate that the United States Supreme Court would extend the Swain principle  which places limitations on the prosecutor's exercise of the peremptory challenge to systematically exclude on racial grounds  to systematic exclusions based on ideology, such as jurors' scruples against imposition of the death penalty. The court expressly stated that it would not resolve the issue whether Swain applied to that type of case. Dobbert, 409 So.2d at 1057. It is elementary in the law that a case is only authority for what it actually decides, and what may seem to flow logically from it is not binding precedent. Stickney v. Belcher Yacht, Inc., 424 So.2d 962, 966 n. 4 (Fla. 3d DCA 1983).
The Neil court recognizes that the issue it certifies to the supreme court is "particularly troublesome" but then thinks itself paralyzed by precedent. Indeed, that is not the case for the reasons already stated. To call the issue "troublesome" is a myopic understatement. It has been increasingly a "burning" issue in the community.[4] A judge visiting from another circuit expressed mild outrage about, and banned as blatant, the Dade County practice of systematically excluding blacks by use of the peremptory challenge.[5] Other fair-minded judges in this district have adopted in principle the Wheeler-Soares procedure. For example, in Cotes v. State, 437 So.2d 178 (Fla. 3d DCA 1983), the trial judge conducted a separate hearing during which the prosecutor was required to explain why the exercise of peremptory challenges had resulted in the removal of all blacks seated as prospective jurors. Armed with Neil v. State, the attorney general challenged the court's action by cross-appeal, abandoning the state attorney's "we don't discriminate on the basis of race" argument in favor of "we may do so with impunity."
Because discriminatory use of the peremptory challenge is court protected, other institutions have been turned to for solutions.[6] Now, with the untimely decision in *483 Neil v. State, a threat exists that the efforts of some trial judges and community institutions to halt the invidious practice may unravel. Most distressing of all is that the court in Neil v. State rejected the invitation extended to state courts by the United States Supreme Court in McCray v. New York,[7] to independently examine and decide the issue presented to the Court.[8] That invitation may be interpreted as a concession by the majority of the Court, creator of the monster Swain, that Swain is an anachronism.
Neil v. State is, in my opinion, a "bail-out" on a thorny constitutional question, but I am, by rules of this court, obligated to adhere to it. That this court is powerless to address the question is simply inaccurate. That it has to, even if incidentally, assume an obstructionist role with respect to the problem-solving efforts of community institutions is disconcerting. This simply is not, nor has it ever been the nature of the judicial process. Judicial lawmaking is aptly described by an eminent jurist:
[L]ogic, and history, and custom, and utility, and the accepted standards of right conduct, are the forces which singly or in combination shape the progress of law. Which of these forces shall dominate in any case, must depend largely upon the comparative importance or value of the social interests that will be thereby promoted or impaired. One of the most fundamental social interests is that the law shall be uniform and impartial. There must be nothing in its action that savors of prejudice or favor or even arbitrary whim or fitfulness... . The social interest served by symmetry or certainty must then be balanced against the social interest served by equity and fairness or other elements of social welfare. These may enjoin upon the judge the duty of drawing the line at another angle, of staking the path along new courses, of marking a new point of departure from which others who come after him will set out upon their journey.[9]
The mischievous misuse which caused the peremptory challenge to first fall into disuse in England in the year 1305 is just as rampant in this district today.[10] The "social *484 interest", as well as the welfare of a tarnished judicial system, compels this court to seize the opportunity to stake a new course. Adoption of the Wheeler-Soares principle is that new course; it is also a reasonable way to restore some credibility to the system while at the same time salvaging the peremptory challenge. A majority of this court opts instead for the status quo. For this reason my concurrence is with total disappointment.
NOTES
[1] The state's peremptory challenge developed in England before that of the defendant's, and prior to 1305 the state had unlimited use of such challenges. Since the unlimited right proved to be "mischievous to the subject, tending to infinite delays and danger," it was discontinued in 1305. In the seventeenth century, a substitute for the prosecution's peremptory challenge was instituted as the so-called right to "stand aside." The defendant's right to peremptory challenge became firmly established by the fifteenth century at the latest. Comment, Swain v. Alabama: A Constitutional Blueprint for the Perpetuation of the All-White Jury, 52 Va.L.Rev. 1157, 1170-1172 (1966). The peremptory challenge has fallen into disuse in England. Swain v. Alabama, 380 U.S. at 218, 85 S.Ct. at 834. Nonetheless, even those who are critical of its misuse, including this writer, do not suggest that it should be abolished. The position embraced by the majority in Neil  that judicial scrutiny of peremptory challenges signals its demise  is needlessly alarmist. A prima facie showing of abuse of the process is a prerequisite to any judicial inquiry as to its use.
[2] Both California, in People v. Wheeler, 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748 (1978) and Massachusetts, in Commonwealth v. Soares, 377 Mass. 461, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979), have rejected the standard set forth in Swain v. Alabama in favor of a more realistic test for scrutinizing alleged misuse of the peremptory challenge. Swain requires, according to Neil v. State, that a defendant, in order to show discrimination in jury selection, prove (1) the particular prosecutor, (2) in every type of case, (3) in every set of circumstances, and (4) for an extended provable period of time has, (5) peremptorily excused black venire persons with the result that no black person has ever served on a petit jury in a case tried by that prosecutor.

People v. Wheeler, which expressly found Swain not binding on California courts, stated several reasons for this holding. A major rationale, and one shared by the Soares court, is that Swain provides no protection to the first defendant who suffers such discrimination in any given court, and to all defendants following him, until an extended pattern of prosecutorial abuse becomes apparent over a period of time. This lack of protection exists despite the state constitutional provision entitling every defendant to trial by jury drawn from a representative cross-section of the community. Swain is also rejected because of the nearly insurmountable barriers to meeting its burden of proof, as reflected by the numerous cases in which defendants, attempting to satisfy the Swain test, have virtually always failed. First, a defendant cannot easily obtain information regarding racial discrimination in the exercise of peremptory challenges occurring in the other trials held in the same court. Furthermore, the first prong of the Swain test (as interpreted by Neil) is difficult to meet, and in this case it is a practical absurdity because in the Dade County state attorney's office there are over 100 attorneys and the average tenure of trial prosecutors is, admittedly, less than three years.
Although the courts of Pennsylvania and Alaska, in Commonwealth v. Futch, 492 Pa. 359, 424 A.2d 1231 (1981) and Mallott v. State, 608 P.2d 737 (Alaska 1980) were presented with the question of whether the Wheeler-Soares rule should be adopted by those jurisdictions, they deferred a decision on that issue because of the insufficient records in both cases. However, both the concurring opinion in Futch, 424 A.2d at 1235, and the dissenting opinion in Mallott, 608 P.2d at 752, urge adoption of the Wheeler-Soares test.
[3] In McCray v. New York, ___ U.S. ___, ___, 103 S.Ct. 2438, 2439, 77 L.Ed.2d 1322, 1323 (1983), Justice Marshall, in a dissent joined by Justice Brennan, noted that Swain pre-dates Duncan, and emphasized the need to reconsider the Swain standard in light of sixth amendment principles established in Taylor v. Louisiana and other post-Swain Supreme Court cases. In McCray and two companion cases the Court denied certiorari review on the question "whether the Constitution prohibits the use of peremptory challenges to exclude members of a particular group from the jury, based on the prosecutor's assumption that they will be biased in favor of members of the same group." ___ U.S. at ___, 103 S.Ct. at 2438, 77 L.Ed.2d at 1322.

In People v. Wheeler and Commonwealth v. Soares, the California and Massachusetts supreme courts, respectively, noted that Swain could be distinguished because it pre-dates both Duncan and Taylor. Wheeler, 148 Cal. Rptr. at 908, 583 P.2d at 767, Soares, 387 N.E.2d at 511 n. 15. However, both courts declined to base their decisions on that ground since they relied on state constitutional provisions in reaching their results.
[4] "The practice of excluding blacks from juries in racially sensitive cases was listed in the Governor's Report on The 1980 Miami Riot as a reason why blacks in Dade County distrust the Criminal Justice System. The practice was specifically identified as a cause of the 1980 so-called `McDuffie Riots' which followed acquittal of white officers who beat to death a local black insurance executive." Miami Times, June 23, 1983, at 1, col. 1.
[5] In State v. Barnes, Case No. 80-3039, Eleventh Judicial Circuit, Dade County, and Case No. 80-4541CF, Fifteenth Judicial Circuit, Palm Beach County, Judge Marvin Mounts, Jr. interrupted the jury selection process and conducted a hearing to determine whether the state was using the peremptory challenge to exclude blacks.
[6] In a June 29, 1983 response to a report published by the United States Commission on Civil Rights entitled "Confronting Racial Isolation in Miami," two community organizations, Greater Miami United, and the Dade Community Revitalization Board, both headed by prominent citizens, prepared a definitive accounting of what the community was doing to implement the Commissioner's recommendations. One of the recommendations and the response thereto are pertinent:

Recommendation 7.4: The State Attorney's Office should adopt a written policy that is committed to ethnically and racially diverse juries and that forbids Assistant State Attorneys to make peremptory challenges on the basis of a potential juror's race.
 Respondent
Janet Reno, State Attorney.
 Summary
The new Policies and Procedures Manual of the State Attorney's Office declares that: `Absolutely no decision or action of this office should be influenced in any manner whatsoever by an inappropriate bias or prejudice based on such things as a person's race, sex, religion, ethnic background and national origin.'
The issue of the proper exercise of peremptory challenges is being considered by this Court and Courts around the nation. Specifically, the Third District Court of Appeals is considering a number of cases which raise this issue, including the City of Miami vs. Cornett, a civil case.
When a trial judge indicates reason to believe that a prosecutor is systematically excluding prospective jurors on the basis of race or some other inadmissible criterion, the State Attorney has a two-fold policy. She has the prosecutor announce the reasons for exclusion(s), and offers continuation of jury selection until the trial Court is satisfied.
See also Metro-Miami Action Program, June 22, 1983, Sensitivity In The Criminal Justice System. Recommended Action: (A) Expand pool of eligible jurors, (B) Revise Florida Statute 913.08 by reducing the number of peremptory challenges presently allowed.
[7] See supra note 3. In McCray, Justice Stevens, joined by Justices Blackmun and Powell, agreed with the minority opinion's appraisal of the importance of the issue raised in the petition for certiorari but thought it an exercise of sound discretion to allow the various states to serve as laboratories to further study the problem before it is addressed by the United States Supreme Court.
[8] The question has been presented to this court in several cases which were filed and argued prior to both Neil v. State and this case. In the earliest case the question was well-briefed and argued by the parties and amicus curiae on both sides. Amicus for the position of the indigent plaintiff was appointed by this court. While the panel in the earlier case was preparing its opinion, Neil was decided. By a 5-4 vote an en banc hearing of Neil v. State was denied on a finding that it conflicted with no other case of this court.
[9] B. Cardozo, Nature of the Judicial Process (1921).
[10] The quest for a fair trial, in highly publicized criminal cases with racial overtones, is regularly stymied by procedural blitzkrieg. Where the accused is white and the victim black, it is a predictable defense tactic to paint the prosecution as political  brought to satisfy a revenge-seeking black community, and to portray the accused as a sacrificial lamb. Although of questionable relevance to the issue of guilt, this "defense", where permitted, is historically successful even in the face of overwhelming evidence. All that is needed is a philosophically receptive jury, the first requirement of which is that it be all white. If the case involves multiple defendants or multiple counts (which increases the number of peremptory challenges), the state may be powerless to prevent the defense from exercising its challenges in such fashion as to obtain the desired homogeneous (and presumptively unconstitutional) panel. More often than not there will be more peremptory challenges than blacks to be challenged. See, e.g., State v. Diggs (Case No. 79-21601, Eleventh Judicial Circuit, Dade County) (the so-called "McDuffie case"). On the other hand, where the defendant is black, the state may similarly exercise its peremptory challenges to exclude blacks, the effect of which, just the same, is to permit a setting where group biases may dominate the jury's deliberations. Commonwealth v. Soares, 387 N.E.2d at 516.

The state suggests here and in its new Policies and Procedures Manual (see n. 6, supra) that it may be appropriate to exclude a potential juror on the basis of race where the prosecutor feels that any juror of the same race as the defendant would be biased in his favor. This raises an interesting collateral question. What happens where the defendant is white and the facts are such that any white is likely to be biased in favor of the accused? Aside from the fact that it is a numerical impossibility to exclude all whites from a jury, the state undoubtedly would not think it appropriate. The unstated premise in the state's suggestion, obviously, and one which is supported by no empirical or scientific data, is that only racial minorities in general, and blacks in particular, harbor group biases.
The point made here is that the peremptory challenge, especially in racially-charged cases, is susceptible to use by the state or the defense in a way which undermines the integrity of a trial. A solution is judicial insistence on what Wheeler-Soares promotes and what the Constitution requires  a jury which fairly represents a cross-section of the community. This requirement prevails even where a desired nonrepresentative jury is peremptorily possible. See Commonwealth v. Soares, supra. The fair jury that the Constitution contemplates is one of "diffused impartiality", which serves as a hedge against an overzealous or mistaken prosecutor, Duncan v. Louisiana, 391 U.S. at 155-56, 88 S.Ct. at 1450-51, or otherwise assures that the jury's verdict will not be the product of any extremely partial view. See Taylor v. Louisiana, supra.