463 So.2d 399 (1985)
CITY OF MIAMI, Officer J. O'Neil and Officer Jewitt, Appellants,
v.
Charles CORNETT, a/k/a Willie Williams, Appellee.
No. 81-85.
District Court of Appeal of Florida, Third District.
January 29, 1985.
Rehearing Denied March 5, 1985.
Lucia Allen Dougherty, City Atty., Fowler, White, Burnett, Hurley, Banick & Strickroot and Michael J. Murphy and Gregor M. Gaebe, Miami, for appellants.
Steel, Hector & Davis, Miami, and Talbot D'Alemberte, Tallahassee, as court-appointed amicus curiae, for appellee.
*400 Janet Reno, State Atty., and Ira N. Loewy, Asst. State Atty., for State Attorney as amicus curiae.
James C. Burke, Miami, for Dade County Black Lawyers' Association, Inc., as amicus curiae.
Before SCHWARTZ, C.J., and BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The sole question on this appeal is whether the exercise of peremptory challenges in civil proceedings is subject to the rule announced in State v. Neil, 457 So.2d 481 (Fla. 1984), a criminal case, that both parties may challenge the alleged improper use of peremptory challenges to exclude from jury service prospective jurors solely on the basis of race.[1] We conclude that the principle upon which Neil is founded  that parties have a right to an impartial jury  applies with equal force to a civil jury trial. We thus unhesitatingly affirm the order under review.
Charles Cornett, a black man, instituted suit against the City of Miami and two of its police officers for damages sustained when he was shot in the back while being apprehended by the officers. This alleged use of excessive force left Cornett totally paralyzed from the waist down. An all-white jury returned a verdict for the defendants.
The trial judge granted Cornett a new trial, setting forth his reasons in a written order from which this appeal is taken. The order states in pertinent part:
"This trial commenced shortly after verdicts had been returned in two other much publicized cases. In the latter of the two cases, the county's school superintendent, a black, was indicted, suspended from office, then convicted of grand theft. The Superintendent was tried before an all-white jury after a number of blacks had been challenged peremptorily. In the earlier case, an all-white jury acquitted several white officers of murder and manslaughter charges in the beating death of a black insurance agent  the infamous `McDuffie Case'. All prospective black jurors had been challenged, some for cause, most peremptorily. Moments following the verdict in that case there was a civil disturbance in the community resulting in millions of dollars of property damage and several deaths. Those killed included whites and blacks, and in a few instances the motives were clearly racial. Judicial notice is taken of these background circumstances as they shed light on community tensions in general at the time of this trial and the probable effect on the conduct of this trial. Some white prospective jurors admitted that they couldn't be fair. At least one admitted to being fearful and asked to be excused.
"At a pre-trial conference the parties were limited to four challenges each. Afterwards the venire was seated with four blacks among their number. Counsel for the plaintiff then approached the bench to voice a premature objection to the defendant's exercise of his peremptory challenges to remove black members of the venire. The objection was raised again during the jury selection process and again after the last challenge had been exercised. As was predicted by plaintiff, defense counsel exercised each of its four peremptory challenges against blacks thereby insuring an all-white jury. *401 The objections were eventually overruled without a hearing.
"As one ground in support of the Motion plaintiff contends essentially that because of an improper exercise of the peremptory challenge by the defendant he was deprived of a fair and impartial trial by a jury which included members of his ethnic group....
... .
"The misuse of the peremptory challenge to eliminate identifiable groups contributes to an undermining of the integrity of the justice system. Unquestionably there are cases where the outcome of the trial has been determined by the composition of the jury  with results contrary to the weight of the evidence. The existence of such an unimpaired ability to manipulate the outcome of a trial is a legitimate reason for doubt as to fairness. It then becomes the responsibility of the court to minimize that potential for abuse by imposing some reasonable limitations on the exercise of the challenge. This is essential if the community is to have confidence in the jury trial process. The facts, the issues raised, and the timing of the trial are circumstances which in combination made this case an extremely sensitive one. The appeal to biases were more overt than subtle, though not necessarily the doings of counsel."
... .
Other portions of the order indicate that the trial judge, apparently of the belief at the time of trial that Swain v. Alabama[2] proscribed inquiry into whether the defendants' peremptory challenges were being exercised solely on the basis of race,[3] became persuaded after the trial that the constraints of Swain, being shed elsewhere,[4] would some day be shed in Florida. The Florida Supreme Court's decision in State v. Neil proved him to be correct.
In Neil, the court, finding that further adherence to the test established in Swain v. Alabama would impede rather than further the right to a fair and impartial trial guaranteed by the Florida Constitution, held that the test to be thereafter applied in Florida courts was this:
"Instead of Swain, trial courts should apply the following test. The initial presumption is that peremptories will be exercised in a nondiscriminatory manner. A party concerned about the other side's use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race. If a party accomplishes this, then the trial court must decide if there is a substantial likelihood that the peremptory challenges are being exercised solely on the basis of race. If the court finds no such likelihood, no inquiry may be made of the person exercising the questioned peremptories. On the other hand, if the court decides that such a likelihood has been shown to exist, the burden shifts to the complained-about party to show that the questioned challenges were not exercised solely because of the prospective jurors' race. The reasons given in response to the court's inquiry need not be equivalent to those for a challenge for cause. If the party shows that the challenges were based on the particular case on trial, the parties or witnesses, or characteristics of the challenged persons other than race, then the inquiry should end and jury selection *402 should continue. On the other hand, if the party has actually been challenging prospective jurors solely on the basis of race, then the court should dismiss that jury pool and start voir dire over with a new pool."
457 So.2d at 486-87 (footnotes omitted).
We now turn to the question of whether Neil applies to civil cases. Neil focused on Article I, Section 16 of the Florida Constitution, which guarantees to an accused in a criminal case the right to a trial by an impartial jury. The civil analogue applicable to this case is Article I, Section 22 of the Florida Constitution, which provides that "[t]he right of trial by jury shall be secure to all and remain inviolate." While Section 22 does not expressly grant civil litigants the right of trial by an impartial jury,[5] we believe that anything less than an impartial jury is the functional equivalent of no jury at all. As the United States Supreme Court said in Thiel v. Southern Pacific Co., 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181, 1184-85 (1946):
"The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community.... Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury."
See State v. Silva, 259 So.2d 153, 160 (Fla. 1972). Thus, it is wholly immaterial that Article I, Section 16 of the Florida Constitution and the Sixth Amendment to the United States Constitution expressly call for an impartial jury while their counterpart provisions applicable to civil cases, Article I, Section 22 and the Seventh Amendment, do not;  the requirement of impartiality inheres in any provision granting the right to a jury trial. Neil's declaration that Swain impedes, rather than furthers, the guarantee of impartiality necessarily applies to civil cases.[6]See Holley v. J & S Sweeping Co., 143 Cal. App.3d 588, 192 Cal. Rptr. 74 (1983) (holding in People v. Wheeler applies to civil case); Terrio v. McDonough, 16 Mass. App. 163, 450 N.E.2d 190, rev. denied, 453 N.E.2d 1231 (Mass. 1983) (strongly suggesting that holding in Commonwealth v. Soares would apply in civil case).
Cognizant of Neil's view that the judge attending the voir dire is in a better position than a reviewing court to determine whether there is a "substantial likelihood" that peremptory challenges are being exercised on the basis of race, and considering the trial judge's order in its entirety, we conclude that the comments in the order, although not presciently couched in the language of the later-decided Neil, can be fairly read as the equivalent of a "substantial likelihood" finding.[7] Under Neil, such a finding must be followed by inquiry, and where none occurs, a new trial is required. A new trial, of course, is precisely what the *403 trial judge ordered, and his ruling must, accordingly, be affirmed.
Affirmed.
NOTES
[1] The question of Neil's applicability to trials which concluded before the decision in Neil was rendered has already been resolved. Despite the statement in Neil that "we do not hold that the instant decision is retroactive," 457 So.2d at 488, the Florida Supreme Court's later action in the substantially identical case of Andrews v. State, 459 So.2d 1018 (Fla. 1984), quashing 438 So.2d 480 (Fla. 3d DCA 1983), establishes that Neil applies to cases, as the present one, in which the issue was raised at trial and which were pending when Neil was decided. See Safford v. State, 463 So.2d 378 (Fla. 3d DCA 1985). Cf. Hoberman v. State, 400 So.2d 758 (Fla. 1981) (applying holding in State v. Sarmiento, 397 So.2d 643 (Fla. 1981), to case pending on appeal).
[2] 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
[3] Swain placed the burden on the defendant to prove that the prosecutor's systematic use of challenges against blacks was purposeful discrimination. As Neil noted, that burden was seldom, if ever, met.
[4] The trial court's order cites to Commonwealth v. Soares, 377 Mass. 461, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979), and People v. Wheeler, 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748 (1978).
[5] In Neil, the court, holding that both the state and the defense may challenge the allegedly improper use of peremptories, flatly declared that "[t]he state, no less than a defendant, is entitled to an impartial jury." 457 So.2d at 487. Since the Florida Constitution does not expressly provide that the state is entitled to an impartial jury, Neil itself is authority for the proposition that the basic right to a jury trial for any litigant includes the right that the jury be impartial.
[6] In Malvo v. J.C. Penney Co., 512 P.2d 575, 580 n. 7 (Alaska 1973), the court observed that although neither the Seventh Amendment to the United States Constitution nor Article I, Section 16 of the Alaska Constitution pertaining to civil suits, specified that the juries must be impartial, if systematic exclusion of blacks from the jury venire in a civil case were shown, the denial of due process would be the same as in the criminal case.
[7] The fact that the trial judge additionally expressed the belief, based on the Wheeler-Soares rule, not adopted in Neil, that a prima facie case of systematic exclusion was established when the defendants used all of their peremptory challenges to eliminate all blacks from the venire, does not change our view.